# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN J. ERBACHER,[1] | Case No. 1:23-cv-01194-JLT-BAM (PC) |
| Plaintiff, | SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE AMENDED COMPLAINT |
| v. | |
| ROBLES, *et al.*, | (ECF No. 1) |
| Defendants. | **THIRTY (30) DAY DEADLINE** |

Plaintiff Justin J. Erbacher[1] ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's complaint is currently before the Court for screening. (ECF No. 1.)

**I.    Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

---

[1] Based on the allegations in the complaint, the Court refers to Plaintiff using feminine pronouns. If Plaintiff has different preferred pronouns, Plaintiff may inform the Court in the next filing.

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.    Plaintiff's Allegations**

Plaintiff is currently housed at the California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California, where the events in the complaint are alleged to have occurred. Plaintiff names the following defendants, all of whom are employed at CSATF: (1) Correctional Officer Robles; (2) Correctional Officer Doe 1; (3) Correctional Officer Doe 2; and (4) Correctional Lieutenant Williams.

Plaintiff alleges as follows:

On Tuesday, March 23, 2021, Plaintiff attended a scheduled medical appointment at the Correctional Treatment Center ("CTC") at CSATF.

Upon returning to A-Facility, Plaintiff and six other inmates (Inmate Montgomery, Inmate Greer, Inmate Charpentier, Inmate Reyes, and unknown inmate with a cane, and an unknown inmate with a walker) approached the A-Facility Work Change where Defendant Correctional Officers Robles, Doe 1, and Doe 2 were in charge of processing inmates back onto the yard. Plaintiff was the only transgender in the group.

///

2

1    Inmates Greer and Montgomery were the first to enter Work Change, where Robles waved them through without requiring them to "strip out" for an unclothed search or subjecting them to any manner of search whatsoever. Plaintiff and the inmate with a cane next approached the Work Change, each of them pushing one of the wheelchair-bound inmates. Plaintiff was pushing Inmate Reyes, while the other inmate was pushing Inmate Charpentier. Neither Robles nor the other Defendant C/Os required Inmate Reyes or Charpentier to strip out or subjected them to any manner of search whatsoever. Robles simply told Inmates Reyes and Charpentier to go through back to the yard. As Plaintiff and the inmate with the cane, along with the inmate with the walker, prepared to follow suit, Robles suddenly ordered them to go back outside, stating to the other officers, "Ya know what? We're gonna strip these guys out," and started putting on latex gloves.

Plaintiff and the inmates with the cane and walker exited Work Change, immediately after which Robles called to the inmates with the cane and walker to reenter Work Change, where they were instructed to merely pull their shirts up and shake them out, after which they were waved through to the yard.

Robles then called for Plaintiff to enter the Work Change. As Plaintiff did so, Plaintiff immediately presented Robles with her transgender identification card. Robles looked at the card and ordered Plaintiff to strip. Plaintiff stated that she would not strip in front of them (the male C/Os), and that a female officer was to be called to strip her out per her transgender search preference chrono (which had been approved on February 21, 2021). Robles picked up Plaintiff's transgender identification card and stated that it did not have a search preference on it, so it did not matter. Plaintiff stated that she had not yet received her new transgender identification card with the search preference, but that Robles could look up the approval chrono on the computer he had right in front of him. Robles refused to do so, insisting that Plaintiff's chrono had not yet been approved, and because of such he was not required to call a female officer to strip Plaintiff out. Plaintiff then requested to be taken to the A-Facility Program Office to speak to a sergeant, lieutenant, or higher officer. Robles refused. Plaintiff then requested that a supervisor be called to the Work Change. Robles again refused. He pointed to Plaintiff's breasts and stated, "Those

3

things on your chest don't make you special! You're not leaving this room until you take your clothes off – all of them, all the way!" Plaintiff was crying and shaking, but she still refused, stating to Robles that what he was doing was wrong. At this point Defendants Doe 1 and Doe 2 stood up and came around from behind their desks with their hands on their pepper spray cannisters. Robles continued to berate Plaintiff, stating, "There's twenty other girls on the yard that come through here and have to do the same thing and they don't give me any problems about it!"

Because Plaintiff realized that she was neither going to be taken to the Program Officer to speak to a supervisor, nor was a supervisor going to be called, and because Plaintiff was in fear of the immediate threat to her personal safety, she turned to Doe 2 who, by the stripes on his arm, had seniority and started to remove her clothes. When she got down to her bra and panties Doe 2 told her, "Okay, now just squat and cough." As Plaintiff did so, however, Robles interjected, saying "No! I said everything needs to come off." Plaintiff responded, "This C/O just told me that I didn't need to," to which Robles responded, "No offense to my partner, even though he has seniority, he's only here for the day. What I'm telling you is what you need to do." Doe 2 remained silent. So Plaintiff removed her bra and panties and squatted and coughed, with Robles leering at her the entire time. As Plaintiff gathered her clothes and started to dress, she told Robles that she was going to report him to the Program Office. Robles just laughed and said, "Don't be mad at me. Ask Mia and China. They'll tell you that what I'm doing is okay."

As Plaintiff exited the Work Change, she discovered that her podmate, Inmate Reyes, was still waiting for her in his wheelchair to be pushed back to the building. Plaintiff did so and then went to Medical to receive her noontime medication. After returning to her building, Plaintiff immediately emailed her mother, Melody Erbacher, to apprise her of what happened and instructed her to call all of the sexual misconduct helpline numbers. Plaintiff then got on the phone with her and listened as she spoke to the helpline people. She received a message back from them that it would be looked into.

On Wednesday, March 24, 2021, at approximately 9:00 a.m., Plaintiff was called to the front of her housing unit to speak to Sergeant Palafox of the Investigative Services Unit ("ISU"),

who is not named as a defendant.  Despite the sensitive nature of the issue, Sgt. Palafax did not conduct Plaintiff to a private office, but, rather, conducted his "interview" (sans taking notes for recording Plaintiff's statements) directly in front of the building, in full view and earshot of passersby.  Sgt. Palafox's "interview" consisted of having Plaintiff recount the events of the previous day and asking Plaintiff if she could <u>prove</u> that not all the inmates going through Work Change at the time were made to strip out and/or witnesses that could support Plaintiff's "version" of events.  Plaintiff responded that there were witnesses (inmates who had gone through Work Change at the same time), all of whom could be identified by the log book.  Sgt. Palafox stated that he would look through the log book.  That was the extent of the "interview."

On the same day (3/23/21),[2] Plaintiff was seen by psychological clinician Savanna Bailey, with whom Plaintiff discussed the events that occurred the day before and how violated and threatened Plaintiff had been made to feel.  During their encounter Ms. Bailey confirmed that Plaintiff's search preference chrono had been approved on 2/21/21 and that such information was readily available on the computer.

On Wednesday, April 21, 2021, Plaintiff submitted a CDCR 602 Inmate Appeal (Log # 110883) concerning Robles' sexual harassment.

On Thursday, April 22, 2021, Plaintiff was summoned to the A-Facility Program Office where she was interviewed by two ISU officers, a lieutenant and a sergeant.  They asked Plaintiff to recount the events of 3/23/21, and asked several questions, recording the entire conversation.  They stated that there was no record of Sgt. Palafox's "interview" and that they had not been informed of it.  They also stated that there were definitely procedural errors in Robles' actions.

Approximately a week to two weeks later, Plaintiff was summoned to the Program Office where she was ushered into the office of Defendant Lieutenant Williams.  He explained that he had called Plaintiff in regarding her appeal claiming Robles sexually harassed her.  He stated, "I don't even know how this landed on my desk.  This is above my pay grade."  Plaintiff informed Defendant Williams that she had already discussed the events with ISU officers.  Williams responded, "If that's true, then why did this land on my desk?"  He then added, "You know that

---

[2] Plaintiff may have intended to write "3/24/21" as the date of his appointment with his clinician.

1  no one is going to get into trouble over this."

2  On Thursday, May 13, 2021, Inmate Charpentier, one of the wheelchair-bound inmates who went through Work Change with their group on 3/23/21, signed a declaration stating that he was not made to strip out upon their return from CTC, nor subjected to any manner of search whatsoever.

In late June of 2021, Plaintiff received from the Office of Grievances a Grievance Claims Decision Response, dated 6/19/2021, indicating that Plaintiff's Inmate Appeal on Defendant Robles' sexual harassment had been "disapproved." The response stated that the disapproval was in part based on the "interview" conducted on March 21, 2021 by Internal Affairs Sergeant Palafox. Not only was the date of the "interview" incorrect, but there was no mention of the second interview on April 22, 2021, which had been more in depth than Sgt. Palafox's, and had been recorded to preserve evidence and statements. It also incorrectly stated that, at the time of the incident (March 23, 2021) Plaintiff's search preference had not been approved when her search preference chrono had been approved on February 21, 2021, a fact easily ascertained by a simple review of Plaintiff's ERMS file.

Plaintiff immediately submitted her Inmate Appeal to the CDCR Office of Appeals in Sacramento for a higher level response.

In late September of 2021, Plaintiff received from the CDCR Office of Appeals an Appeals Claims Decision Response, dated September 18, 2021. The response and an attached memorandum stated that since the 60-day time limit for a response from the Office of Appeals had expired, no actual higher level response would be given and the answer provided by the Office of Grievances at CSATF remained unchanged.

Defendant Robles committed sexual misconduct upon Plaintiff when he sexually harassed Plaintiff, a transgender inmate, by forcing Plaintiff to submit to an illegal unclothed search in defiance of Plaintiff's registered search preference by a female officer, and under duress of the threat of physical violence, in violation of 15 CCR § 3401.5, Penal Code § 2606, the U.S. Constitution's Fourth Amendment and the California Constitution's Article 1 § 13 prohibition against unreasonable searches, and the U.S. Constitution's Eighth Amendment and the California

6

1  Constitution's Article 1 § 17 prohibition against cruel and unusual punishment and deliberate
2  indifference to Plaintiff's constitutional rights and personal safety.
3  Defendant Doe 1 acted in violation of the U.S. Constitution's Eighth Amendment and the
4  California Constitution's Article 1 § 17 prohibition on cruel and unusual punishment when he
5  was deliberately indifferent to the violation of Plaintiff's constitutional rights by Defendants
6  Robles and Doe 2 in their actions of committing sexual misconduct upon Plaintiff, a transgender
7  inmate, personally acted to place Plaintiff under duress of the threat of physical violence, and
8  deliberately chose to not report the incident to the highest-ranking officer on duty in violation of
9  15 CCR § 3401.5.
10 Defendant Doe 2 committed sexual misconduct upon Plaintiff when he sexually harassed
11 Plaintiff, a transgender inmate, when he participated with Defendant Robles in forcing Plaintiff to
12 submit to an illegal unclothed search in defiance of Plaintiff's registered search preference by a
13 female officer, and under duress of the threat of physical violence, in violation of 15 CCR §
14 3401.5, Penal Code § 2606, the U.S. Constitution's Fourth Amendment and the California
15 Constitution's Article 1 § 13 prohibition against unreasonable searches, and the U.S.
16 Constitution's Eighth Amendment and California Constitution's Article 1 § 17 prohibition against
17 cruel and unusual punishment and deliberate indifference to Plaintiff's constitutional rights and
18 personal safety.
19 Defendant Williams acted with deliberate indifference to Plaintiff's complaint when he
20 failed to meaningfully investigate Plaintiff's claims and declined to follow the protocol for
21 reporting and investigating the incident, in violation of 15 CCR § 3401.5.  Defendant Williams
22 also acted with deliberate indifference to Plaintiff's claim of sexual harassment at the hands of
23 officers under his supervision when he flatly stated that "no one is going to get in trouble over
24 this," in violation of Penal Code § 182(a)(5)'s prohibition against conspiring to obstruct.
25 Plaintiff requests actual and punitive damages.

**III.  Discussion**

27 Plaintiff's complaint fails state a cognizable claim for relief.  As Plaintiff is proceeding
28 *pro se*, she will be granted leave to amend her complaint to the extent that she can do so in good

7

faith. To assist Plaintiff, the Court will provide the pleading and legal standards that appear relevant to her claims.

### A.     Supervisory Liability

Insofar as Plaintiff is attempting to Defendant Correctional Lieutenant Williams, or any other defendant, based solely upon his supervisory role, she may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d at 570. Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

### B.     Fourth and Eighth Amendments – Strip Searches

"The Fourth Amendment prohibits only unreasonable searches." *Bell v. Wolfish*, 441 U.S. 520, 558 (1979). Courts regularly recognize the importance and difficulty of keeping detention

1   facilities free from drugs, weapons, and other contraband. *Id.* at 559; *see also Way v. Cty. of*
2   *Ventura*, 445 F.3d 1157, 1161 (9th Cir. 2006). However, courts also recognize the "frightening
3   and humiliating invasion" occasioned by a strip search "even when conducted with all due
4   courtesy." *Way*, 445 F.3d at 1160 (internal quotation marks omitted); *Byrd v. Maricopa Cty.*
5   *Sheriff's Dep't*, 629 F.3d 1135, 1143 (9th Cir. 2011). Although some visual body cavity searches
6   of prisoners may be reasonable, others can "be excessive, vindictive, harassing, or unrelated to
7   any legitimate penological interest." *Michenfelder v. Sumner*, 860 F.2d 328, 322 (9th Cir. 1988).
8   There is no precise definition to assess reasonableness, and each case "requires a balancing of the
9   need for the particular search against the invasion of personal rights that the search entails." *Bell*,
10  441 U.S. at 559. The prisoner "bears the burden of showing that [prison] officials intentionally
11  used exaggerated or excessive means to enforce security." *Thompson v. Souza*, 111 F.3d 694,
12  700 (9th Cir. 1997) (quoting *Michenfelder*, 860 F.2d at 333) (finding visual body cavity search
13  conducted in full view of other inmates and intended to detect illicit drugs was reasonably related
14  to a legitimate penological interest).

15       Cross-gender searches are viewed differently. An Eighth Amendment violation has been
16  found where the female prisoner plaintiffs, found to be particularly vulnerable to a severe
17  psychological injury from the search, are subjected to random cross-gender clothed body searches
18  unrelated to prison security. *Jordan v. Gardner*, 986 F.2d 1521, 1525–28 (9th Cir. 1993) (finding
19  cross-gender body search policy constituted unnecessary "infliction of pain" under the Eighth
20  Amendment where women inmates had "shocking histories of verbal, physical, and, in particular,
21  sexual abuse" by men). In the Fourth Amendment context, the Ninth Circuit concluded that a
22  cross-gender strip search of a pretrial detainee in a non-emergency situation where same-sex
23  guards were available was an unreasonable intrusion on the detainee's Fourth Amendment rights.
24  *Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1142 (9th Cir. 2011) (*en banc*); *see also*
25  *Shorter v. Baca*, 895 F.3d 1176, 1189 (9th Cir. 2018) (under Fourteenth Amendment challenge,
26  court concluded that county's search practices were not entitled to deference where county did
27  not offer reason for leaving mentally ill female inmates shackled to their cell doors for hours,
28  virtually unclothed, and without access to meals, water or a toilet, visible to both male and female

prison guards on patrol).

Although a cross-gender strip search that involves touching the inmate's genitalia and searching inside his anus is unreasonable, *Byrd*, 629 F.3d 1135, 1142 (9th Cir. 2011) (en banc), that does not mean that all cross-gender searches are unreasonable, or that prisoners of one gender may not be guarded by guards of the other gender. *Uvalles v. Jaquez*, No. C 09-5221 RMW PR, 2013 WL 1283390, at *8–9 (N.D. Cal. Mar. 27, 2013). In *Grummett v. Rushen*, 779 F.2d 491, 494 (9th Cir. 1985), the Ninth Circuit upheld a system of assigning female officers within a correctional facility such that they occasionally viewed male inmates in various states of undress and conducted routine pat-downs of fully clothed inmates. *Id.*, citing *Byrd*, 629 F.3d at 1142. Assigned positions of female guards that required only infrequent and casual observation, or observation at a distance, of unclothed male prisoners and that are reasonably related to prison needs are not so degrading as to warrant court interference. *Id.*, citing *Michenfelder v. Sumner*, 860 F.2d 328, 334 (9th Cir. 1988) (held that routine visual body cavity searches conducted in hallways did not violate the Fourth Amendment after situations where inmates had been presented with the opportunity to obtain contraband or a weapon); *see also Jordan*, 986 F.2d at 1524–25 (en banc) (privacy interest in freedom from cross-gender clothed body searches not "judicially recognized"). The issue is whether officers regularly or frequently observe unclothed inmates of the opposite sex without a legitimate reason for doing so. *Uvalles*, 2013 WL 1283390, at *8–9, citing *Michenfelder*, 860 F.2d at 334.

Based on the allegations in the complaint, Plaintiff fails to state a cognizable claim for violation of the Fourth or Eighth Amendments related to the cross-gender strip search. Plaintiff alleges that she was subjected to a single, unclothed, visual body cavity search and does not allege that she was touched by any defendant during the search. Plaintiff also does not allege that the search was excessive or unrelated to a legitimate penological purpose, even though other inmates in her group were not searched. In addition, Plaintiff does not allege that even with her status as a transgender inmate with a female officer search preference she was particularly vulnerable to a severe psychological injury from a search by a male officer.

///

### C. Eighth Amendment – Sexual Harassment

"Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment. *See Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) ('In the simplest and most absolute of terms . . . prisoners [have a clearly established Eighth Amendment right] to be free from sexual abuse. . . .'); *see also Women Prisoners of the Dist. of Columbia Dep't of Corr. v. District of Columbia*, 877 F. Supp. 634, 665 (D.D.C. 1994) ('[U]nsolicited touching of … prisoners' [genitalia] by prison employees are "simply not part of the penalty that criminal offenders pay for their offenses against society"' (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 . . . (1994))), aff'd in part and vacated in part, 93 F.3d 910 . . . (D.C. Cir. 1996)." *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012.) "In evaluating a prisoner's claim, courts consider whether 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Id.*

However, while "the Ninth Circuit has recognized that sexual harassment may constitute a cognizable claim for an Eighth Amendment violation, the Court has specifically differentiated between sexual harassment that involves verbal abuse and that which involves allegations of physical assault, finding the later to be in violation of the constitution." *Minifield v. Butikofer*, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004) (citation omitted). Here, Plaintiff does not clearly allege that any defendant physically touched her in a sexual manner. *Somers v. Thurman*, 109 F.3d 614, 624 (9th Cir. 1997) ("To hold that gawking, pointing, and joking violates the prohibition against cruel and unusual punishment would trivialize the objective component of the Eighth Amendment test and render it absurd.").

Further, to the extent Plaintiff seeks to impose liability against Defendant Robles arising out of his verbal conduct, she may not do so. Allegations of verbal abuse or harassment fail to state a constitutional claim. *See Oltarzewski v. Ruggiero,* 830 F.2d 136, 139 (9th Cir. 1987) (finding that "verbal harassment generally does not violate the Eighth Amendment"); *Gaut v. Sunn,* 810 F.2d 923, 925 (9th Cir. 1987) (holding that prisoner's allegations of threats allegedly made by guards failed to state a cause of action). However, verbal harassment may violate the constitution when it is "'unusually gross even for a prison setting and [is] calculated to and [does]

1   cause [plaintiff] psychological damage." *Cox v. Kernan*, 2019 WL 6840136, at *5 (E.D. Cal.

2   Dec. 16, 2019) (alterations in original) (quoting *Keenan*, 83 F.3d 1083 at 1092).

3         As alleged, Plaintiff's complaint fails to state a cognizable claim against any defendant for

4   sexual harassment based on the search or any verbal conduct.

5       **D.**     **Failure to Investigate**

6         To the extent Plaintiff alleges that Defendant Williams, or any other defendant, violated

7   her rights for an inadequate investigation, Plaintiff's claims are not a basis for a plausible § 1983

8   claim. *Baker v. Beam*, 2019 WL 1455321, at *6 (E.D. Cal. 2019); *Drake v. Ibal*, No. 1:22-CV-

9   01149 BAM PC, 2022 WL 18027808, at *8 (E.D. Cal. Dec. 30, 2022) (no claim for faulty

10  investigation for removal of evidence from the investigative file).  To the degree Plaintiff is trying

11  to hold the individuals or others liable for an independent, unspecified constitutional violation

12  based upon an allegedly inadequate investigation, there is no such claim. *See Gomez v. Whitney*,

13  757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam) ("[W]e can find no instance where the courts

14  have recognized inadequate investigation as sufficient to state a civil rights claim unless there was

15  another recognized constitutional right involved."); *Page v. Stanley*, 2013 WL 2456798, at *8–9

16  (C.D. Cal. June 5, 2013) (dismissing Section 1983 claim alleging that officers failed to conduct

17  thorough investigation of plaintiff's complaints because plaintiff "had no constitutional right to

18  any investigation of his citizen's complaint, much less a 'thorough' investigation or a particular

19  outcome"); *Tirado v. Santiago*, No. 1:22-CV-00724 BAM PC, 2022 WL 4586294, at *5 (E.D.

20  Cal. Sept. 29, 2022), report and recommendation adopted, No. 1:22-CV-00724 JLT BAM PC,

21  2022 WL 16748838 (E.D. Cal. Nov. 7, 2022) (no constitutional claim for failing to investigate an

22  appeal).

23      **E.**     **Processing Grievances**

24        Plaintiff alleges that Defendant Williams failed to follow protocol for reporting and

25  investigating the incident and violated Penal Code § 182(a)(5)'s prohibition against conspiring to

26  obstruct.  However, Plaintiff cannot pursue any claims against prison staff based solely on the

27  processing and review of her inmate appeals.  Plaintiff does not have a constitutionally protected

28  right to have her appeals accepted or processed. *Ramirez v. Galaza,* 334 F.3d 850, 860 (9th

1  Cir.2003); *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir.19 88).  The prison grievance procedure
2  does not confer any substantive rights upon inmates and actions in reviewing appeals cannot
3  serve as a basis for liability under section 1983.  *Buckley v. Barlow,* 997 F.2d 494, 495 (8th
4  Cir.1993); *see also Wright v. Shannon,* No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at
5  *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his
6  inmate appeals failed to state a cognizable claim under the First Amendment).  Denial or refusal
7  to process a prison grievance is not a constitutional violation.  *Rushdan v. Gear,* No. 1:16-cv-
8  01017-BAM (PC), 2018 WL 2229259, at *6 (E.D. Cal. May 16, 2018).  Accordingly, Plaintiff
9  fails to state a cognizable claim arising out of the screening or processing of her grievances or
10 complaints.

### F.  Prison Regulations

To the extent that Plaintiff attempts to bring any claims solely based on a defendant's violation of prison rules and policies, she may not do so, as alleged violations of prison rules and policies do not give rise to a cause of action under § 1983.  Section 1983 provides a cause of action for the deprivation of federally protected rights.  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress."  *Sweaney v. Ada Cty., Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996)); *see Davis v. Kissinger*, No. CIV S–04–0878-GEB-DAD-P, 2009 WL 256574, *12 n.4 (E.D. Cal. Feb. 3, 2009).  Nor is there any liability under § 1983 for violating prison policy.  *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)).  Thus, the violation of any prison regulation, rule or policy does not amount to a cognizable claim under federal law, nor does it amount to any independent cause of action under section 1983.

### G.  Criminal Statutes

Plaintiff alleges that defendants violated or failed to comply with the requirements of various provisions of the California Penal Code.  However, Plaintiff has no constitutional right to have another person criminally prosecuted.  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619

(1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"). Criminal statutes generally do not provide a private cause of action or a basis for civil liability. *See, e.g.*, *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (18 U.S.C. §§ 241 and 242 provide no private right of action and cannot form basis for civil suit). When a criminal statute is violated, the question of whether to prosecute and what criminal charges to file or bring are decisions that generally rest in the discretion of the prosecutor, not the Court. *United States v. Batchelder*, 442 U.S. 114, 124 (1979). Plaintiff therefore fails to state any cognizable claims based on defendants' alleged violation of California criminal statutes.

### H.    State Law Claims

California's Government Claims Act[3] requires that a claim against the State[4] or its employees "relating to a cause of action for death or for injury to person" be presented to the Department of General Services' Government Claims Program no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2. Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit. *State v. Super. Ct. of Kings Cty. (Bodde)*, 32 Cal. 4th 1234, 1245 (Cal. 2004); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public entity or employee, a plaintiff must allege compliance with the Government Claims Act. *Bodde*, 32 Cal. 4th at 1245; *Mangold*, 67 F.3d at 1477; *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988).

Further, pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The

---

[3] This Act was formerly known as the California Tort Claims Act. *City of Stockton v. Super. Ct.*, 42 Cal. 4th 730, 741–42 (Cal. 2007) (adopting the practice of using Government Claims Act rather than California Tort Claims Act).

[4] "'State' means the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller." Cal. Gov't Code § 900.6.

1     Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state

2     claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715,

3     726 (1966).

4          Here, Plaintiff's complaint fails to state any cognizable federal claims, and Plaintiff has

5     not alleged compliance with the Government Claims Act.  The Court therefore declines to

6     exercise jurisdiction over Plaintiff's state law claims at this time.

7          **I.     Doe Defendants**

8          Plaintiff names several Doe defendants, and states that she has endeavored to ascertain the

9     full names of the defendants in the complaint, but has been thwarted as staff refused to divulge

10    the information or look it up.  "As a general rule, the use of 'John Doe' to identify a defendant is

11    not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  Plaintiff is advised that

12    John Doe or Jane Doe defendants (i.e., unknown defendants) cannot be served by the United

13    States Marshal until Plaintiff has identified them as actual individuals and amended her complaint

14    to substitute names for John Doe or Jane Doe.  If Plaintiff files an amended complaint and is

15    found to state cognizable claims against any of the Doe defendants, Plaintiff will be provided an

16    opportunity to provide additional information to identify those defendants for service.

17    **IV.     Conclusion and Order**

18         For the reasons stated, Plaintiff's complaint fails state a cognizable claim for relief.  As

19    Plaintiff is proceeding *pro se*, the Court will grant Plaintiff an opportunity to amend her

20    complaint to cure the above-identified deficiencies to the extent she is able to do so in good faith.

21    *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

22         Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what

23    each named defendant did that led to the deprivation of Plaintiff's constitutional rights, *Iqbal*, 556

24    U.S. at 678–79.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise

25    a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted).

26    **Plaintiff's amended complaint may not exceed twenty-five (25) pages, exclusive of exhibits**.

27         Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated

28    claims in her first amended complaint.  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no

"buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a first amended complaint curing the deficiencies identified by the Court in this order (or file a notice of voluntary dismissal). **Plaintiff's amended complaint may not exceed twenty-five (25) pages, exclusive of exhibits**; and
3. **If Plaintiff fails to comply with this order, the Court will recommend dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim.**

IT IS SO ORDERED.

Dated:   **September 21, 2023**          /s/ *Barbara A. McAuliffe*          _
                                          UNITED STATES MAGISTRATE JUDGE