Plaintiff's Name **Justin James Erbacher**
Inmate No. **G-64213**
Address **CSATF/SP**
**P.O. Box 5248   A1-10-4 low**
**Corcoran, CA   93212**

FILED
OCT 16 2023
CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Justin James Erbacher                    1:23-cv-01194-JLT-BAM(PC)
_____           _____
(Name of Plaintiff)                              (Case Number)

vs.                                      **AMENDED CIVIL RIGHTS COMPLAINT UNDER:**

Robles                                   ☒ 42 U.S.C. 1983 (State Prisoner)
_____
                                         ☐ **Bivens** Action [403 U.S. 388 (1971)] (Federal Prisoner)
_____

_____

_____

RECEIVED
OCT 10 2023
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____DEPUTY CLERK

_____
(Names of all Defendants)

**I. Previous Lawsuits** (list all other previous or pending lawsuits on additional page):

A. Have you brought any other lawsuits while a prisoner? Yes **X** No____

B. If your answer to A is yes, how many? **1**

Describe previous or pending lawsuits in the space below. (If more than one, attach additional page to continue outlining all lawsuits in same format.)

1. Parties to this previous lawsuit:

Plaintiff **Justin James Erbacher**

Defendants **Stu Sherman, Warden**

2. Court (if Federal Court, give name of District; if State Court, give name of County)
**U.S. District Court, Eastern District of California**

3. Docket Number **1:20-cv-01135-EPG**     4. Assigned Judge _____

5. Disposition (Was the case dismissed? Appealed? Is it still pending?)
**Settled out of court, dismissed.**

6. Filing Date (approx.) <u>cannot rememgber</u>   7. Disposition Date (approx.) <u>cannot remember</u>

## II. Exhaustion of Administrative Remedies

**NOTICE:** Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Prior to filing suit, inmates are <u>required</u> to exhaust the available administrative remedy process, *Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1999 (9th Cir. 2002), and neither futility nor the unavailability of money damages will excuse the failure to exhaust, *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002).  If the court determines that an inmate failed to exhaust prior to filing suit, the unexhausted claims will be dismissed, without prejudice. *Jones*, 549 U.S. at 223-24, 127 S.Ct. at 925-26.

   A. Is there an inmate appeal or administrative remedy process available at your institution?

   Yes <u>X</u>    No _____

   B. Have you filed an appeal or grievance concerning **ALL** of the facts contained in this complaint?

   Yes <u>X</u>    No _____

   C. Is the process completed?

   Yes <u>X</u>    If your answer is yes, briefly explain what happened at each level.

   <u>Denied at Institutional Level, timed out at the Departmental Level - see</u>

   <u>attached Statement of Facts.</u>

   No _____    If your answer is no, explain why not.

## III. Defendants

List each defendant's full name, official position, and place of employment and address in the spaces below. If you need additional space please provide the same information for any additional defendants on separate sheet of paper.

   A. Name <u>Robles</u>    is employed as <u>a correctional officer</u>

   Current Address/Place of Employment <u>CSATF/SP</u>

B. Name _____ is employed as _____

Current Address/Place of Employment _____

C. Name _____ is employed as _____

Current Address/Place of Employment _____

D. Name _____ is employed as _____

Current Address/Place of Employment _____

E. Name _____ is employed as _____

Current Address/Place of Employment _____

**IV. Causes of Action** (You may attach additional pages alleging other causes of action and the facts supporting them if necessary. Must be in same format outlined below.)

**Claim 1**: The following civil right has been violated (e.g. right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.):

_Eighth Amendment prohibition against cruel and unusual punishment, specifically Sexual Harassment/Misconduct_

**Supporting Facts** (Include all facts you consider important to Claim 1. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Claim 1.):

_See Attached Statement Of Facts_

**Claim 2:** The following civil right has been violated (e.g. right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.):

Fourth Amendment prohibition against unreasonable searches; specifically an unclothed search that was excessive, vindictive, harassing, unrelated to any legitimate penological interest, and in defiance of Plaintiff's registered search preference.

Supporting Facts (Include all facts you consider important to Claim 2. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Claim 2.):

See attached Statement of Facts

**V. Relief**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statues.

$500,000.00 in actual damages, plus punative and jury award, plus any further and additional relief the Court deems proper.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 10/12/2023      Signature of Plaintiff: _____

(Revised 4/4/14)

## BRIEF SUMMARY OF CLAIMS

**Defendant Robles:** That on March 23, 2021, Correctional Officer Robles committed sexual misconduct upon Plaintiff Erbacher (a transgender inmate) when he sexually harassed Plaintiff Erbacher by forcing Plaintiff Erbacher to submit to an illegal unclothed search that was excessive, vindictive, harassing, and unrelated to any legitimate penological interest. The search was conducted in defiance to Plaintiff Erbacher's registered search preference by a female officer, and under duress of the threat of physical violence and the verbal harassment of C/O Robles that was unusually repulsive even for a prison setting and calculated to, and did, cause Plaintiff Erbacher psychological damage. Defendant Robles's actions violated the U.S. Constitution's Fourth Amendment prohibition against unreasonable searches, and the U.S. Constitution's Eighth Amendment prohibition against cruel and unusual punishment.

STATEMENT OF FACTS

1. On Tuesday, March 23, 2021, I attended a scheduled medical appointment at the Correctional Treatment Center ("CTC") at the California Substance Abuse Treatment Facility/State Prison in Corcoran, California.

2. Upon returning to A-Facility I and six other inmates (Inmate Montegomery, Inmate Greer, Inmate Charpentier, Inmate Reyes, an unknown inmate with a cane, and an unknown inmate with a walker) approached the A-Facility Work Change where Correctional Officer ("C/O") Robles and C/O's Doe 1 and Doe 2 were in charge of processing inmates back onto the yard. I was the only transgender in the group.

3. Inmates Greer and Montegomery were the first to enter Work Change, where C/O Robles waved them through without requiring them to "strip out" for an unclothed search or subjecting them to any manner of search whatsoever. I and the inmate with a cane next approached the Work Change, each of us pushing one of the wheelchair bound inmates. I was pushing Inamate Reyes while the other inmate was pushing Inamte Charpentier. Neither C/O Robles nor the other C/O's required Inmate Reyes or Charpentier to strip out or subjected them to any manner of search whatsoever. C/O Robles simply told Inmate Reyes and Charpentier to go throuh back to the yard. As I and the inmate with the cane, along with the inmate with the walker, prepared to follow suit, C/O Robles suddenly ordered us to go back outside, stating to the other officers "Ya know what? We're gonna strip **these** guys out," and started putting on latex gloves.

4. I and the imates with the cane and walker exited Work Change, immediately after which C/O Robles called to the inmate with a cane and the inmate with the walker to reenter Work Change, where they were instructed to merely pull

their shirts and shake them out, after which they were waved through to the yard.

5. C/O Robles then called for me to enter the Work Change. As I did so I immediately presented C/O Robles with my transgender identification card. C/O Robles looked at the card and ordered me to strip. I stated that I would not strip in front of them (the male C/O's), and that a female officer was to be called to strip me out per my transgender search preference chrono (which had been approved on February 21, 2021). C/O Robles picked up my transgender identification card and stated that it did not have a search preference on it, so it did not matter. I stated that I had not yet received my new transgender identification card with the search preference, but that he could look up the approval chrono on the computer he had right in front of him. He refused to do so, insisting that my chrono had not yet been approved, and because of such he was not required to call a female officer to strip me out. He did not state that there were no female officers available. I then requested to be taken to the A-Facility Program Office to speak to a sergeant, lieutenant, or higher officer. C/O Robles refused. I then requested that a supervisor be called to the Work Change. C/O Robles again refused. He pointed to my breasts and stated "Those things on your chest don't make you special!! You're not leaving this room until you take your clothes off - all of them, all the way!!" At this point, and especially after C/O Robles's pointing at and commenting on my breats (I am on hormone therapy for female breast development), I was crying and shaking, but I still refused, stating to C/O Robles that what he was doing was wrong. At this point C/O's Doe 1 and Doe 2 stood up and came around from behind their desks with their hands on their pepperspray canisters. C/O Robles continued to berrate me, stating, "There's twenty other girls on the yard that come through here and have to do the same thing and they

don't give me any problems about it!"

6. Because I realized that I was neither going to be taken to the Program Office or speak to a supervisor, nor was a supervisor going to be called, and because I was in fear of the immediate threat to my personal safety, I turned to C/O Doe 2 who, by the stripes on his arm, had senority and started to remove my clothes. When I got down to my bra and panties C/O Doe 2 told me "Okay, now just squat and cough." As I did so, however, C/O Robles interjected, saying "No! I said everything needs to come off!" I responded "This C/O just told me that I didn't need to," to which C/O Robles responded "No offense to my partner, even though he has senority, he's only here for the day. What I'm telling you is what you need to do." C/O Doe 2 remained silent. So I removed my bra and panties and squatted and coughed, with C/O Robles leering at me the entire time. As I gathered my clothes and started to dress, I told C/O Robles that I was going to report him to the Program Office. C/O Robles just laughed and said "Don't be mad at me. Ask Mia and China. They'll tell you that what I'm doing is okay."

7. As I exited the Work Change, I discovered that my podmate, Inmate Reyes, was still waiting for me in his wheelchair to be pushed back to the building. I did so and then went to Medical to receive my noontime medication. After returning to my building I immedately emailed my mother, Melody Erbacher, to apprise her of what happened and instructed her to call all of the sexual misconduct helpline numbers. I then got on the phone with her and listened as she spoke to the helpline people. She received a message back from them that it would be looked into.

8. On Wednesday, March 24, 2021, at approximately 9:00 a.m., I was called to the front of my housing unit to speak to Sergeant Palafox of the Investigative

Services Unit ("ISU"). Despite the sensitive nature of the issue, Sgt. Palafox did not conduct me to a private office, but, rather, conducted his "interview" (sans taking notes for recording my statments) directly in front of the building, in full view and earshot of passerbys. Sgt. Palafox's "interview" consisted of having me recount the events of the previous day and asking me if I could **prove** that not all the inmates going through Work Change at the time were made to strip out and/or witnesses that could support my **"version"** of events. I responded that there were witnesses (inmates who had gone through Work Change at the same time), all of whom could be identified by the log book. Sgt. Palafox stated that he would look through the log book. That was the extent of the "interview."

9. On the same day (3/24/21), at my emergency request, I was seen by psychological clinician Savanna Bailey, with whom I discussed the events that occurred the day before and how violated and threatened I had been made to feel. During our encounter, Ms. Bailey confirmed that my search preference chrono had been approved on 2/21/21 and that such information was readily available on the computer.

I am a patient in the CDCR's Correctinal Clinial Case Management System (CCCMS), diagnosed with Major Depressive Disorder with psychotic features and anxiety. From 2009-2019 I was a patient in the CDCR's Enhanced Outpatient Program (EOP), a more intensive level of the CCCMS program, precipitated by three suicide attempts on my part, the last in 2012. I suffered a documented traumatizing sexual assault when I was seven that was so horiffic it has had lasting effects into adulthood, so much so that in 2018 I was seen by a psychological clinician that so resembled my sexual assailant that I had a documented panic attack and needed to be assigned a new clinician.

10. On Wednesday, April 21, 2021, I submitted a CDCR 602 Inmate Appeal (Log # 110883) concerning C/O Robles's sexual harassment.

11. On Thursday, April 22, 2021, I was summoned to the A-Facility Program Office where I was interviewed by two I.S.U. officers, one a lieutenant and the other a sergeant. They asked me to recount the events of 3/23/21, and asked several questions, recording the entire conversation. They stated that there was no record of Sgt. Palafox's "interview" and that they had not been informed of it. They also stated that there were definitely procedural errors in C/O Robles's actions.

12. Approximately a week to two weeks later I was summoned to the Program Office where I was ushered into the office of Lieutenant Williams. He explained that he had called me in regarding my appeal claiming C/O Robles had sexually harassed me. He stated "I don't even know how this landed on my desk. This is above my pay grade." I informed Lt. Williams that I had already discussed the events with I.S.U. officers. Lt. Williams responded "If that's true, then why did this land on my desk?" He then added, "You know that no one is going to get into trouble over this."

13. On Thursday, May 13, 2021, Inmate Charpentier, one of the wheelchair bound inmates who went through Work Change with our group on 3/23/21, signed a declaration stating that he was not made to strip out upon our return from CTC, nor subjected to any manner of search whatsoever.

14. In late June of 2021 I received from the Office of Grievances a Grievance Claims Decision Response, dated 6/19/2021, indicating that my Inmate Appeal on C/O Robles's sexual harassment had been "disapproved." The response stated

that the disapproval was in part based on the "interview" conducted on March 23, 2021 [by] Internal Affiars Sergeant Palafox. Not only was the date of the "interview" incorrect, there was no mention of the second interview on April 22, 2021, which had been more in depth that Sgt. Palafox's, and had been recorded to preserve evidence and statements. It also incorrectly stated that, at the time of the incident, (March 23, 2021) my search preference had not been approved when my search preference chrono had been approved on February 21, 2021, a fact easily ascertained by a simple review of my digital ERMS file.

15. I immediately submitted my Inmate Appeal to the CDCR Office of Appeals in Sacramento for a higher level response.

16. In late September of 2021 I received from the CDCR Office of Appeals an Appeal Claims Decision Response, dated September 18, 2021. The response and an attached memorandum stated that since the 60-day time limit for a response from the Office of Appeals had expired, no actual higher level response would be given and the answer provided by the Office of Grievances at CSATF/SP remained unchanged.

17. From March 23, 2021, until C/O Robles was reassigned and left the Work Change position, I refused all the medical appointments I could that involved going through Work Change out of the petrifying fear of a repeat of the events of March 23, 2021. It was, in fact, the refusing of medical appointments due to the fear and anxiety of going through Work Change and being sexually harassed by C/O Robles that led to my being denied Gender Affirmation Surgery (GAS). Even now, when I have to go to the CTC, I cannot even approach Work Change without having a near panic attack at

the fear that I will walk through the door and see Robles, or that I will experience events similar to that of March 23, 2021.

I, Justin Erbacher, swear under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 10/12/2023

Respectfully Submitted,

Justin Erbacher,
Plaintiff, In Pro Se