1
2
3
4

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN J. ERBACHER, | Case No.  1:23-cv-01194-JLT-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM |
| v. | |
| ROBLES, *et al.*, | (ECF No. 11) |
| Defendants. | **FOURTEEN (14) DAY DEADLINE** |

Plaintiff Justin J. Erbacher[1] ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983.  Plaintiff's first amended complaint is currently before the Court for screening.  (ECF No. 11.)

I.     **Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

---

[1] Based on the allegations in the first amended complaint, the Court refers to Plaintiff using feminine pronouns.  If Plaintiff has different preferred pronouns, Plaintiff may so inform the Court.

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II.      Plaintiff's Allegations

Plaintiff is currently housed at the California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California, where the events in the complaint are alleged to have occurred.  Plaintiff names only one defendant, Correctional Officer Robles.[2]

Plaintiff alleges as follows:

On Tuesday, March 23, 2021, Plaintiff attended a scheduled medical appointment at the Correctional Treatment Center ("CTC") at CSATF.  Upon returning to A-Facility, Plaintiff and six other inmates (Inmates Montegomery, Greer, Charpentier, and Reyes, an unknown inmate with a cane, and an unknown inmate with a walker) approached the A-Facility Work Change where Defendant Correctional Officer ("C/O") Robles and C/Os Doe 1 and Doe 2 were in charge of processing inmates back onto the yard.  Plaintiff was the only transgender in the group.

Inmates Greer and Montegomery were the first to enter Work Change, where Defendant Robles waved them through without requiring them to "strip out" for an unclothed search or subjecting them to any manner of search whatsoever.  Plaintiff and the inmate with the cane next approached the Work Change, each of them pushing one of the wheelchair-bound inmates. Plaintiff was pushing Inmate Reyes while the other inmate was pushing Inmate Charpentier. Neither Defendant Robles nor the other C/Os required Inmates Reyes or Charpentier to strip out

---

[2] The original complaint also named Correctional Officer Doe 1, Correctional Officer Doe 2, and Correctional Lieutenant Williams as defendants.  (ECF No. 1.)  As these defendants have been omitted from the first amended complaint, the Court will screen only those claims relating to the actions or omissions of Defendant Robles.

1  or subjected them to any manner of search whatsoever.  Defendant Robles simply told Inmates

2  Reyes and Charpentier to go through back to the yard.  As Plaintiff and the inmates with the cane

3  and the walker prepared to follow suit, Defendant Robles suddenly ordered them to go back

4  outside, stating to the other officers "Ya know what? We're gonna strip these guys out," and

5  started putting on latex gloves.

6  Plaintiff and the inmates with the cane and walker exited Work Change, immediately after

7  which Defendant Robles called to the inmates with the cane and the walker to reenter Work

8  Change, where they were instructed to pull their shirts and shake them out, after which they were

9  waved through to the yard.

10  Defendant Robles then called for Plaintiff to enter the Work Change.  As Plaintiff did so,

11  she immediately presented Defendant Robles with her transgender identification card.  Defendant

12  Robles looked at the card and ordered Plaintiff to strip.  Plaintiff stated that she would not strip in

13  front of them (the male C/Os), and that a female officer was to be called to strip Plaintiff out per

14  her transgender search preference chrono (which had been approved on February 21, 2021).

15  Defendant Robles picked up Plaintiff's transgender identification card and stated that it did not

16  have a search preference on it, so it did not matter.  Plaintiff stated that she had not yet received

17  her new identification card with the search preference, but that he could look up the approval

18  chrono on the computer right in front of him.  Defendant Robles refused to do so, insisting that

19  Plaintiff's chrono had not yet been approved, and because of such he was not required to call a

20  female officer to strip Plaintiff out.  He did not state that there were no female officers available.

21  Plaintiff then requested to be taken to the A-Facility Program Office to speak to a sergeant,

22  lieutenant, or higher officer.  Defendant Robles refused.  Plaintiff then requested that a supervisor

23  be called to the Work Change.  Defendant Robles again refused.  He pointed to Plaintiff's breasts

24  and stated "Those things on your chest don't make you special!! You're not leaving this room

25  until you take your clothes off – all of them, all the way!!"  At this point, and especially after

26  Defendant Robles pointed at and commented on Plaintiff's breasts (Plaintiff is on hormone

27  therapy for female breast development), Plaintiff was crying and shaking, but she still refused,

28  stating to Defendant that what he was doing was wrong.  At this point C/Os Doe 1 and Doe 2

1  stood up and came around from behind their desks with their hands on their pepper spray

2  cannisters.  Defendant Robles continued to berate Plaintiff, stating, "There's twenty other girls on

3  the yard that come through here and have to do the same thing and they don't give me any

4  problems about it!"

5        Because Plaintiff realized that she was neither going to be taken to the Program Office or

6  speak to a supervisor, nor was a supervisor going to be called, and because she was in fear of the

7  immediate threat to her personal safety, she turned to C/O Doe 2 who, by the stripes on his arm,

8  had seniority and started to remove her clothes.  When Plaintiff got down to her bra and panties

9  C/O Doe 2 told her, "Okay, now just squat and cough."  As Plaintiff did so, Defendant Robles

10  interjected, saying "No! I said everything needs to come off!"  Plaintiff responded "This C/O just

11  told me that I didn't need to," to which Defendant responded "No offense to my partner, even

12  though he has seniority, he's only here for the day.  What I'm telling you is what you need to do."

13  C/O Doe 2 remained silent.  So Plaintiff removed her bra and panties and squatted and coughed,

14  with Defendant Robles leering at her the entire time.  As Plaintiff gathered her clothes and started

15  to dress, she told Defendant that she was going to report him to the Program Office.  Defendant

16  just laughed and said "Don't be mad at me.  Ask Mia and China.  They'll tell you that what I'm

17  doing is okay."

18        As Plaintiff exited the Work Change, she discovered that her podmate, Inmate Reyes, was

19  still waiting for her in his wheelchair to be pushed back into the building.  Plaintiff did so and

20  then went to Medical to receive her noontime medication.  After returning to her building

21  Plaintiff immediately emailed her mother, Melody Erbacher, to apprise her of what happened and

22  instructed her to call all of the sexual misconduct helpline numbers.  Plaintiff then got on the

23  phone with her and listened as she spoke to the helpline people.  Plaintiff's mother received a

24  message back from them that it would be looked into.

25        On Wednesday, March 24, 2021, at approximately 9:00 a.m., Plaintiff was called to the

26  front of her housing unit to speak to Sergeant Palafox of the Investigative Services Unit.  Despite

27  the sensitive nature of the issue, Sgt. Palafox did not conduct Plaintiff to a private office, but

28  rather conducted his "interview" (sans taking notes for recording Plaintiff's statements) directly

1   in front of the building, in full view and earshot of passersby.  Sgt. Palafox's interview consisted

2   of having Plaintiff recount the events of the previous day and asking Plaintiff if she could prove

3   that not all the inmates going through Work Change at the time were made to strip out and/or

4   witnesses that could support Plaintiff's version of events.  Plaintiff responded that there were

5   witnesses (inmates who had gone through Work Change at the same time), all of whom could be

6   identified by the log book.  Sgt. Palafox stated that he would look through the log book.  That was

7   the extent of the interview.

8        On the same day, 3/24/21, at her emergency request, Plaintiff was seen by psychological

9   clinician Savanna Bailey, with whom Plaintiff discussed the events of the day before and how

10  violated and threatened she had been made to feel.  During their encounter, Ms. Bailey confirmed

11  that Plaintiff's search preference chrono had been approved on 2/21/21 and that such information

12  as readily available on the computer.

13       Plaintiff is a patient in the CDCR's Correctional Clinical Case Management System

14  ("CCCMS"), diagnosed with Major Depressive Disorder with psychotic features and anxiety.

15  From 2009–2019 Plaintiff was a patient in CDCR's Enhanced Outpatient Program ("EOP"), a

16  more intensive level of the CCCMS program, precipitated by three suicide attempts on her part,

17  the last in 2012.  Plaintiff suffered a documented traumatizing sexual assault when she was seven

18  that was so horrific it has had lasting effects into adulthood, so much so that in 2018 she was seen

19  by a psychological clinician that so resembled her sexual assailant that she had a documented

20  panic attack and needed to be assigned a new clinician.

21       On Wednesday, April 21, 2021, Plaintiff submitted a CDCR 602 Inmate Appeal (Log

22  #110883) concerning Defendant Robles's sexual harassment.

23       On Thursday, April 22, 2021, Plaintiff was summoned to the A-Facility Program Office

24  where she was interviewed by two ISU officers, one a lieutenant and the other a sergeant.  They

25  asked Plaintiff to recount the events of 3/23/21, and asked several questions, recording the entire

26  conversation.  They stated that there was no record of Sgt. Palafox's interview and that they had

27  not been informed of it.  They also stated that there were definitely procedural errors in Defendant

28  Robles's actions.

5

1   Approximately one to two weeks later, Plaintiff was summoned to the Program Office

2   where she was ushered into the office of Lieutenant Williams.  He explained that he called

3   Plaintiff in regarding her appeal claiming Defendant Robles had sexually harassed her.  He stated

4   "I don't even know how this landed on my desk.  This is above my pay grade."  Plaintiff

5   informed Lt. Williams that she had already discussed the events with ISU officers.  Lt. Williams

6   responded "If that's true, then why did this land on my desk?"  He added, "You know that no one

7   is going to get into trouble over this."

8   On Thursday, May 13, 2021, Inmate Charpentier, one of the wheelchair-bound inmates

9   who went through Work Change with Plaintiff's group on 3/23/21, signed a declaration stating

10   that he was not made to strip out upon their return from CTC, nor subjected to any manner of

11   search whatsoever.

12   In late June of 2021, Plaintiff received from the Office of Grievances a Grievance Claims

13   Decision Response, dated 6/19/2021, indicating that her Inmate Appeal on Defendant Robles's

14   sexual harassment had been "disapproved."  The response stated that the disapproval was in part

15   based on the interview conducted on March 23, 2021 by Internal Affairs Sgt. Palafox.  Not only

16   was the date of the interview incorrect, there was no mention of the second interview on April 22,

17   2021, which had been more in depth than Sgt. Palafox's, and had been recorded to preserve

18   evidence and statements.  It also incorrectly stated that, at the time of the incident (March 23,

19   2021), Plaintiff's search preference had not been approved when her search preference chrono

20   had been approved on February 21, 2021, a fact easily ascertained by a review of Plaintiff's

21   digital ERMS file.

22   Plaintiff immediately submitted her Inmate Appeal to the CDCR Office of Appeals in

23   Sacrament for a higher level response.

24   In late September of 2021 Plaintiff received from the CDCR Office of Appeals an

25   Appeals Claims Decision Response, dated September 18, 2021.  The response and an attached

26   memorandum stated that since the 60-day time limit for a response from the Office of Appeals

27   had expired, no actual higher level response would be given and the answer provided by the

28   Office of Grievances at CSATF remained unchanged.

From March 23, 2021, until Defendant Robles was reassigned and left the Work Change position, Plaintiff refused all medical appointments she could that involved going through Work Change, out of the petrifying fear of a repeat of the events of March 23, 2021.  It was the refusing of medical appointments due to the fear and anxiety of going through Work Change and being sexually harassed by Defendant Robles that led to Plaintiff being denied Gender Affirming Surgery ("GAS").  Even now, when she has to go to the CTC she cannot even approach Work Change without having a near panic attack at the fear that she will walk through the door and see Defendant Robles, or that she will experience events similar to that of March 23, 2021.

**III.    Discussion**

Plaintiff's first amended complaint fails to state a cognizable claim for relief.  Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the identified deficiencies.

**A.      Fourth and Eighth Amendments – Strip Searches**

"The Fourth Amendment prohibits only unreasonable searches."  *Bell v. Wolfish*, 441 U.S. 520, 558 (1979).  Courts regularly recognize the importance and difficulty of keeping detention facilities free from drugs, weapons, and other contraband.  *Id.* at 559; *see also Way v. Cty. of Ventura*, 445 F.3d 1157, 1161 (9th Cir. 2006).  However, courts also recognize the "frightening and humiliating invasion" occasioned by a strip search "even when conducted with all due courtesy."  *Way*, 445 F.3d at 1160 (internal quotation marks omitted); *Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1143 (9th Cir. 2011).  Although some visual body cavity searches of prisoners may be reasonable, others can "be excessive, vindictive, harassing, or unrelated to any legitimate penological interest."  *Michenfelder v. Sumner*, 860 F.2d 328, 322 (9th Cir. 1988).  There is no precise definition to assess reasonableness, and each case "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails."  *Bell*, 441 U.S. at 559.  The prisoner "bears the burden of showing that [prison] officials intentionally used exaggerated or excessive means to enforce security."  *Thompson v. Souza*, 111 F.3d 694, 700 (9th Cir. 1997) (quoting *Michenfelder*, 860 F.2d at 333) (finding visual body cavity search conducted in full view of other inmates and intended to detect illicit drugs was reasonably related

7

1    to a legitimate penological interest).

2          Cross-gender searches are viewed differently.  An Eighth Amendment violation has been

3    found where the female prisoner plaintiffs, found to be particularly vulnerable to a severe

4    psychological injury from the search, are subjected to random cross-gender clothed body searches

5    unrelated to prison security.  *Jordan v. Gardner*, 986 F.2d 1521, 1525–28 (9th Cir. 1993) (finding

6    cross-gender body search policy constituted unnecessary "infliction of pain" under the Eighth

7    Amendment where women inmates had "shocking histories of verbal, physical, and, in particular,

8    sexual abuse" by men).  In the Fourth Amendment context, the Ninth Circuit concluded that a

9    cross-gender strip search of a pretrial detainee in a non-emergency situation where same-sex

10   guards were available was an unreasonable intrusion on the detainee's Fourth Amendment rights.

11   *Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1142 (9th Cir. 2011) (*en banc*); *see also*

12   *Shorter v. Baca*, 895 F.3d 1176, 1189 (9th Cir. 2018) (under Fourteenth Amendment challenge,

13   court concluded that county's search practices were not entitled to deference where county did

14   not offer reason for leaving mentally ill female inmates shackled to their cell doors for hours,

15   virtually unclothed, and without access to meals, water or a toilet, visible to both male and female

16   prison guards on patrol).

17         Although a cross-gender strip search that involves touching the inmate's genitalia and

18   searching inside his anus is unreasonable, *Byrd*, 629 F.3d 1135, 1142 (9th Cir. 2011) (en banc),

19   that does not mean that all cross-gender searches are unreasonable, or that prisoners of one gender

20   may not be guarded by guards of the other gender.  *Uvalles v. Jaquez*, No. C 09-5221 RMW PR,

21   2013 WL 1283390, at *8–9 (N.D. Cal. Mar. 27, 2013).  In *Grummett v. Rushen*, 779 F.2d 491,

22   494 (9th Cir. 1985), the Ninth Circuit upheld a system of assigning female officers within a

23   correctional facility such that they occasionally viewed male inmates in various states of undress

24   and conducted routine pat-downs of fully clothed inmates.  *Id.*, citing *Byrd*, 629 F.3d at 1142.

25   Assigned positions of female guards that required only infrequent and casual observation, or

26   observation at a distance, of unclothed male prisoners and that are reasonably related to prison

27   needs are not so degrading as to warrant court interference.  *Id.*, citing *Michenfelder v. Sumner*,

28   860 F.2d 328, 334 (9th Cir. 1988) (held that routine visual body cavity searches conducted in

                                                8

hallways did not violate the Fourth Amendment after situations where inmates had been presented with the opportunity to obtain contraband or a weapon); *see also Jordan*, 986 F.2d at 1524–25 (en banc) (privacy interest in freedom from cross-gender clothed body searches not "judicially recognized").  The issue is whether officers regularly or frequently observe unclothed inmates of the opposite sex without a legitimate reason for doing so.  *Uvalles*, 2013 WL 1283390, at *8–9, citing *Michenfelder*, 860 F.2d at 334.

Based on the allegations in the complaint, Plaintiff fails to state a cognizable claim for violation of the Fourth or Eighth Amendments related to the cross-gender strip search.  Plaintiff alleges that she was subjected to a single, unclothed, visual body cavity search and does not allege that she was touched by Defendant Robles during the search.  Plaintiff also does not allege that the search was excessive or unrelated to a legitimate penological purpose, even though other inmates in her group were not searched.  Although Plaintiff has included allegations in the first amended complaint that she suffered a traumatizing sexual assault when she was seven that had lasting effects into adulthood, and that she experienced fear and anxiety as a result of the March 23, 2021 strip search conducted by Defendant Robles, this is not sufficient to demonstrate that even with her status as a transgender inmate with a female officer search preference she was particularly vulnerable to a severe psychological injury from a search by a male officer.

**B.      Eighth Amendment – Sexual Harassment**

"Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment.  *See Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) ('In the simplest and most absolute terms . . . prisoners [have a clearly established Eighth Amendment right] to be free from sexual abuse. . . .'); *see also Women Prisoners of the Dist. of Columbia Dep't of Corr. v. District of Columbia*, 877 F. Supp. 634, 665 (D.D.C. 1994) ('[U]nsolicited touching of … prisoners' [genitalia] by prison employees are "simply not part of the penalty that criminal offenders pay for their offenses against society"' (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 . . . (1994))), aff'd in part and vacated in part, 93 F.3d 910 . . . (D.C. Cir. 1996)."  *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012.)  "In evaluating a prisoner's claim, courts consider whether 'the officials act[ed] with a sufficiently culpable state of mind' and if the

1    alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Id.*

2           However, while "the Ninth Circuit has recognized that sexual harassment may constitute a

3    cognizable claim for an Eighth Amendment violation, the Court has specifically differentiated

4    between sexual harassment that involves verbal abuse and that which involves allegations of

5    physical assault, finding the later to be in violation of the constitution." *Minifield v. Butikofer*,

6    298 F. Supp. 2d 900, 904 (N.D. Cal. 2004) (citation omitted).  Here, Plaintiff does not clearly

7    allege that any defendant physically touched her in a sexual manner.  *Somers v. Thurman*, 109

8    F.3d 614, 624 (9th Cir. 1997) ("To hold that gawking, pointing, and joking violates the

9    prohibition against cruel and unusual punishment would trivialize the objective component of the

10   Eighth Amendment test and render it absurd.").

11          Further, to the extent Plaintiff seeks to impose liability against Defendant Robles arising

12   out of his verbal conduct, she may not do so.  Allegations of verbal abuse or harassment fail to

13   state a constitutional claim.  *See Oltarzewski v. Ruggiero,* 830 F.2d 136, 139 (9th Cir. 1987)

14   (finding that "verbal harassment generally does not violate the Eighth Amendment"); *Gaut v.*

15   *Sunn,* 810 F.2d 923, 925 (9th Cir. 1987) (holding that prisoner's allegations of threats allegedly

16   made by guards failed to state a cause of action).  However, verbal harassment may violate the

17   constitution when it is "'unusually gross even for a prison setting and [is] calculated to and [does]

18   cause [plaintiff] psychological damage." *Cox v. Kernan*, 2019 WL 6840136, at *5 (E.D. Cal.

19   Dec. 16, 2019) (alterations in original) (quoting *Keenan*, 83 F.3d 1083 at 1092).

20          As alleged, Plaintiff's complaint fails to state a cognizable claim against Defendant

21   Robles for sexual harassment based on the visual strip search or any verbal conduct.

22          **C.      Prison Regulations**

23          To the extent that Plaintiff attempts to bring any claims solely based on Defendant

24   Robles's violation of prison rules or policies, she may not do so, as alleged violations of prison

25   rules and policies do not give rise to a cause of action under § 1983.  Section 1983 provides a

26   cause of action for the deprivation of federally protected rights.  "To the extent that the violation

27   of a state law amounts to the deprivation of a state-created interest that reaches beyond that

28   guaranteed by the federal Constitution, [s]ection 1983 offers no redress." *Sweaney v. Ada Cty.,*

1    *Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d

2    367, 370 (9th Cir. 1996)); *see Davis v. Kissinger*, No. CIV S–04–0878-GEB-DAD-P, 2009 WL

3    256574, *12 n.4 (E.D. Cal. Feb. 3, 2009).  Nor is there any liability under § 1983 for violating

4    prison policy.  *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting *Gardner v.*

5    *Howard*, 109 F.3d 427, 430 (8th Cir. 1997)).  Thus, the violation of any prison regulation, rule or

6    policy does not amount to a cognizable claim under federal law, nor does it amount to any

7    independent cause of action under section 1983.

8    **IV.       Conclusion and Recommendation**

9               For the reasons discussed, the Court finds that Plaintiff's first amended complaint fails to

10   state a cognizable claim for relief.  Despite being provided with the relevant legal standards,

11   Plaintiff has been unable to cure the deficiencies in his complaint.  Further leave to amend is not

12   warranted.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

13              Accordingly, IT IS HEREBY RECOMMENDED that this action be dismissed, with

14   prejudice, for failure to state a cognizable claim upon which relief may be granted.

15              These Findings and Recommendation will be submitted to the United States District Judge

16   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen**

17   **(14) days** after being served with these Findings and Recommendation, Plaintiff may file written

18   objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

19   Findings and Recommendation."  Plaintiff is advised that failure to file objections within the

20   specified time may result in the waiver of the "right to challenge the magistrate's factual

21   findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v.*

22   *Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

23
     IT IS SO ORDERED.
24

25      Dated:   __**November 7, 2023**__          ___/s/ *Barbara A. McAuliffe*___

26                                                 UNITED STATES MAGISTRATE JUDGE

27

28

                                                   11